**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GALLUS INVESTMENTS, L.P.,
Plaintiff-Appellee,

v.

PUDGIE'S FAMOUS CHICKEN, LIMITED,
Defendant-Appellant,

No. 97-1706

and

PUDGIE'S CHICKEN, INCORPORATED;
STEVEN M. WASSERMAN; HENRY A.
GUINN; MIKE J. BEARSS,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-890-A)

Argued: October 28, 1997

Decided: January 13, 1998

Before WILKINS and MICHAEL, Circuit Judges, and
CAMPBELL, Senior Circuit Judge of the United States Court of
Appeals for the First Circuit, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Campbell wrote the
opinion, in which Judge Wilkins and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Stanley Steven Zinner, GREEN & ZINNER, P.C., White
Plains, New York, for Appellant. Michael Lee Sturm, WILEY, REIN

& FIELDING, Washington, D.C., for Appellee. **ON BRIEF**: Thomas W. Queen, WILEY, REIN & FIELDING, Washington, D.C., for Appellee.

_____

## OPINION

CAMPBELL, Senior Circuit Judge:

Pudgie's Famous Chicken, Ltd., appeals from the district court's confirmation of an arbitration panel's award to Gallus Investments, L.P. As basis for this appeal, Pudgie's challenges the arbitration panel's consideration of evidence allegedly forming part of a settlement offer that Pudgie's made to Gallus during the litigation. The admission of this evidence was improper, according to Pudgie's, because the parties' franchise agreement specified the applicability of New York law, and New York law generally bars the admission of settlement offers. Moreover, according to Pudgie's, the admission of this evidence denied it a fundamentally fair hearing. Disagreeing, we affirm.

I. <u>Background</u>

The facts are largely undisputed. This case arose from a failed business venture between Defendant-Appellant Pudgie's Famous Chicken, Inc. ("Pudgie's"), a franchiser of take-out chicken restaurants, and Gallus Investments, L.P. ("Gallus"). Gallus and Pudgie's signed a franchise agreement that allowed Gallus to develop Pudgie's restaurants in several Virginia counties. That agreement contained two clauses at issue here: an arbitration clause and a choice-of-law clause specifying that the contract was governed by New York law.

The arbitration clause covered "any dispute with respect to either this Agreement or the adequacy of either party's performance thereunder," and stated that "arbitration shall be conducted in accordance with the rules promulgated by the American Arbitration Association." The AAA's Commercial Arbitration Rule 31 provided that "[t]he parties . . . shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute," and that

2

"[t]he arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary."

When the venture failed, Gallus brought the instant diversity-of-citizenship action against Pudgie's. Gallus alleged that Pudgie's and its officers, also defendants here, had misrepresented the success of past Pudgie's franchises. Such misrepresentations were actionable under the New York Franchise Sales Act, N.Y. Gen. Bus. Law §§ 687 & 691. Pursuant to the franchise agreement, the district court referred the case to arbitration.

On the sixteenth day of the eighteen-day arbitration, Gallus proffered the evidence that is at issue here. The documents in question were letters exchanged between the parties' lawyers showing that Pudgie's offered to pay back the $750,000 in expenses that Gallus had expended on the franchise agreement. Some of these letters were marked "Submitted for Settlement Discussion Purposes Only." Over Pudgie's objection, the all-attorney arbitration panel received the documents. Gallus then introduced several other documents providing its version of the $750,000 offer.

The panel decided in favor of Gallus, awarding it a total of $1,706,704 in compensatory damages and attorneys' fees. The district court confirmed the arbitration award, and this appeal followed.

II. Discussion

In the district court and in this appeal, Pudgie's argues that the panel committed a serious error by considering the evidence of settlement offers. Pudgie's first contends that the panel was bound to follow New York's rules of evidence barring the admissibility of settlement offers, in which event, Pudgie's says, the documents in question would not have been admitted.

However, while the franchise agreement's choice-of-law clause specified New York law, the agreement's arbitration clause is equally clear that conformity to legal rules of evidence was unnecessary. The plain language of the agreement provided that disputes between the

3

parties would be arbitrated in accordance with AAA rules, and those rules expressly provided that the arbitrators need not apply judicial rules of evidence.

Despite the arbitration clause's plain language, Pudgie's contends that to ignore the New York evidence rule would vitiate the parties' contractual choice of New York law. However, to force the panel to apply New York's (or any other) evidentiary rules would be to reject the parties' agreement that legal evidentiary rules need not be followed. Fortunately, there is no necessary conflict between the choice-of-law provision and the arbitration clause. The two clauses can easily be reconciled if interpreted to mean that New York law governs the parties' contractual rights and duties, and that the panel is free not to apply legal rules of evidence from any jurisdiction, New York or elsewhere. Such a reading gives effect to the arbitration clause while in no way undermining the choice-of-law provision.

Our reading is consistent with the Supreme Court's approach in Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995). There, the Court considered a contract that, like the one between Pudgie's and Gallus, provided for both arbitration and the parties' choice of law. The Mastrobuono Court upheld the arbitration panel's award of punitive damages despite the fact that the state law prescribed by the contract's choice-of-law provision did not provide for punitive damages (and even though the arbitration clause itself was also silent on the subject of punitive damages). As the Court explained, "the choice of law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration." 514 U.S. at 64. Here, the admissibility of settlement offers falls even more plainly on the "arbitration" side, as it is a subject controlled by evidentiary rules expressly exempted from enforcement under the arbitration clause. We hold, therefore, that the parties' choice-of-law agreement did not preclude the panel from receiving and considering the evidence in question.

Pudgie's insists, nonetheless, that the arbitrators' willingness to tolerate the use of evidence of settlement negotiations violated its right to have a fundamentally fair arbitration, requiring a reversal on that separate ground alone. We do not agree.

4

As an initial matter, the legal basis of Pudgie's claim is not perfectly clear. Judicial review of an arbitration award is limited to the grounds set out in § 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10(a) (providing for vacatur of award based on, inter alia, "fraud," "corruption," "evident partiality," and"misconduct" on the part of the arbitrators, and "[w]here the arbitrators exceeded their powers"), and scrutiny for whether the award evinces a "manifest disregard" of applicable law, Wilko v. Swan, 346 U.S. 427, 436-37 (1953), overruled on other grounds, Rodriguez de Quijas v. Shearson/ American Express, Inc., 490 U.S. 477 (1989). Instead of specifying one of these accepted grounds for vacatur, Pudgie's has chosen to style its argument in terms of its right to a "fundamentally fair hearing" and "due process." We do not take these terms to connote a constitutional claim, as the arbitrators were not state actors for purposes of the Fifth or Fourteenth Amendments. Rather, we read Pudgie's argument to imply that the arbitrators, by admitting evidence of settlement offers, violated one or more unnamed provision of § 10(a), resulting in a lack of "fundamental fairness" and "due process." Without greater specificity, this argument is more rhetorical than real. Still, even assuming without deciding that, in some other imagined context, an arbitrator's blatant use of settlement-offer evidence might be so fundamentally unfair as to violate § 10, we find no such violation here.

In the instant case, the arbitrators at no time broadly rejected the policy against utilization of settlement evidence. Rather they narrowly justified receipt of the documents in question because of their relevance to Gallus's claim to have mitigated damages by, among other things, entering into negotiations with Pudgie's. The arbitrators believed this limited use was not inconsistent with the principles forbidding the introduction of settlement evidence to establish liability. Like judges in a bench trial, the arbitrators were presumably capable of confining their use of evidence to the limited purpose for which received. In any case, whether the arbitrators were right or wrong under strict legal evidentiary standards, the use of these materials, in the manner and context that appears, was plainly not"fundamentally unfair," much less was it a violation of § 10. Accord, Bowles Fin. Group, Inc. v. Stifel Nicolaus & Co., 22 F.3d 1010, 1013-14 (10th Cir. 1994) (rejecting fundamental-unfairness challenge to arbitrators' consideration of settlement offers).

5

Finally, Pudgie's contends that if it becomes common knowledge that arbitrators may feel free to consider settlement offers, this will have a chilling effect on settlement negotiations in other cases, undermining one of the rationales for using alternative dispute resolution. Especially given the limited use made here of these materials, this contention seems obviously extreme. From what appears, the arbitrators had no intention of sabotaging the general rule, meaning to utilize the documents only for a purpose believed to be consistent with it. But even if they were mistaken, and have somehow widened the door to use of such evidence, with unfortunate implications, any danger is better corrected by arbitration associations and private parties than by courts. Rules and contracts can be revised to restrict the use of settlement materials should those persons or groups directly concerned with arbitrations decide that there is a reoccurring problem.*

AFFIRMED

_____

*Again, the legal basis for Pudgie's policy argument is unclear. Courts have long refused to enforce contracts that contravene public policy, but there is no "broad judicial power to set aside arbitration award as against public policy." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987). The Supreme Court has explained that vacatur of an award on public policy grounds must be based on "explicit conflict with other `laws and legal precedents' rather than an assessment of `general considerations of supposed public interests.'" Id. (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). Since, as we have already concluded, the panel followed all the laws applicable under the parties' agreement, this line of argument is unavailing.

6