# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2933

_____

UHC Management Company, Inc.,     *
    *
       Appellee,     *
    *
    v.     *
    *
Computer Sciences Corporation,     *
    *
       Appellant.     *    Appeal from the United States
    *    District Court for the
-------------------------------     *    District of Minnesota.
    *
Computer Sciences Corporation,     *
a Nevada corporation,     *
    *
       Appellant,     *
    *
    v.     *
    *
UHC Management Company, Inc.,     *
a Minnesota corporation,     *
    *
       Appellee.     *

_____

No. 97-3061

_____

| | |
|---|---|
| UHC Management Company, Inc., | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Computer Sciences Corporation, | * |
| | * |
| Appellee. | * |
| | * |
| ------------------------------ | * |
| | * |
| Computer Sciences Corporation, | * |
| a Nevada corporation, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| UHC Management Company, Inc., | * |
| a Minnesota corporation, | * |
| | * |
| Appellant. | * |

_____

Submitted:  March 9, 1998

Filed:  July 7, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

Computer Sciences Corporation appeals from the district court's[2] order confirming the award of an arbitration panel convened pursuant to an arbitration agreement between Computer Sciences and UHC Management Company, Inc. (UHC). We affirm.

**I.**

UHC is the chief contractor for the United Mine Workers of America Combined Benefit Fund, bearing ultimate responsibility for the processing of claims for medical and vision benefits made by the fund's beneficiaries. In November of 1994, Computer Sciences entered into a subcontract with UHC to process these claims commencing in 1995 and extending through the remainder of UHC's five-year contract with the fund. The agreement contained two separate provisions relevant to this appeal. First, it called for the parties to resolve any disputes through binding arbitration:

> 7. <u>Disputes</u> - In the event a dispute between United and Contractor arises out of or is related to this Agreement, the parties shall meet and negotiate in good faith to attempt to resolve the dispute. In the event the dispute is not resolved within 30 days of the date one party sent written notice of the dispute to the other party, and if either party wishes to pursue the dispute, <u>either party may submit it to binding arbitration in accordance with the rules of the American Arbitration Association</u>. In no event may arbitration be initiated more than one year following the sending of

---

[1]The HONORABLE JOSEPH H. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

-3-

written notice of the dispute. Any arbitration proceeding under this Agreement shall be conducted in Hennepin County, Minnesota, U.S.A., or in a mutually agreeable location. <u>The arbitrators shall have no authority to award any punitive or exemplary damages, or to vary or ignore the terms of this Agreement, and shall be bound by controlling law</u>.

Independent Contractor Agreement at 5 (emphasis supplied). Second, within a final section labeled "Miscellaneous," the agreement included the following choice-of-law provision:

> (c) To the extent not preempted by ERISA or other federal law, this Agreement shall by [sic] governed by and construed under the laws of the State of Minnesota.

<u>Id.</u> at 7.

Computer Sciences began processing claims in January of 1995. UHC quickly became dissatisfied with its performance. On February 22, UHC ordered Computer Sciences to cease work and retained First Health Strategies, Inc. to temporarily assume claim processing for the fund. At that point, UHC maintained hope that Computer Sciences could sort out its difficulties and resume performance in 1996. On August 4, 1995, however, after attempting to work with Computer Sciences to restructure its processing system, UHC formally terminated the agreement.

Each party filed a demand for arbitration, claiming that the other had breached its contractual obligations. These actions were consolidated into a single proceeding convened in Minneapolis on August 13, 1996, before a tribunal of the American Arbitration Association, which issued its decision later that year. <u>See</u> <u>In the Matter of the Arbitration between UHC Management Co., Inc, and Computer Sciences Corp.</u>, No. 56 193 00305 95 (A.A.A., Arb. Dec. 30, 1996). The panel found that UHC had effectively terminated the agreement on February 22, 1995, and had breached its

obligations by failing to provide the required notice and opportunity to cure. Concluding that Computer Sciences had not sustained its burden of proving damages, the panel awarded it none. Next, the panel concluded that Computer Sciences had also breached the agreement. It awarded UHC damages totaling approximately $1.3 million. Lastly, the panel stated that it would retain jurisdiction regarding that aspect of the dispute involving Computer Sciences's alleged overpayment of claims, conduct a hearing to determine the extent of such overpayments, and thereafter issue appropriate supplemental damages to reimburse UHC for that loss.

UHC filed this action seeking confirmation of the award, asserting jurisdiction both under 28 U.S.C. § 1332 and under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1970 & 1998 Supp.). That same day, Computer Sciences also filed suit, invoking diversity jurisdiction and seeking relief under the Minnesota Uniform Arbitration Act, Minn. Stat. Ann. §§ 572.08 et seq. (West 1988 & 1998 Supp.) and Minnesota common law.[3] Specifically, Computer Sciences sought: (1) deletion of the damage award to UHC; (2) correction and modification of the award to include an award of damages to Computer Sciences; (3) prohibition of any additional proceedings by the panel to award supplemental damages; and (4) confirmation of the award as modified to these specifications. After consolidating the actions, the district court denied Computer Sciences's claim and confirmed the award as issued by the panel.

---

[3]Computer Sciences has also filed suit against First Health Strategies and the fund itself in California, alleging intentional interference with contractual relations and five additional claims. See Computer Sciences Corp. v. First Health Strategies (TPA), Inc. and United Mine Workers of America Combined Benefit Fund, No. 96-2026 (C.D. Cal. filed Feb. 16, 1996).

## II.

Congress enacted the Federal Arbitration Act (FAA) in order to establish a "national policy favoring arbitration." <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984). The FAA accomplishes this by assuring that when parties to commercial transactions agree to resolve their disputes through arbitration, such provisions will be "valid, irrevocable, and enforceable," subject only to ordinary grounds that "exist at law or in equity for the revocation of any contract." <u>Doctor's Associates, Inc. v. Casarotto</u>, 517 U.S. 681, 683 (1996) (quoting 9 U.S.C. § 2). Thus, the FAA aspires to ensure that commercial arbitration agreements, like other contracts, "are enforced according to their terms." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 947 (1995) (additional citations omitted).

The FAA "is something of an anomaly in the field of federal-court jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 n.32 (1983). The FAA does not itself confer jurisdiction. <u>See</u> <u>id.</u> Instead, when a party to an arbitration agreement seeks to have a federal court enforce its provisions, an independent jurisdictional basis is required. <u>See</u> <u>id.</u>; <u>Pryner v. Tractor Supply Co.</u>, 109 F.3d 354, 359 (7th Cir.), <u>cert. denied</u>, 118 S. Ct. 294 (1997) (arbitration act might be better regarded "not as a source of jurisdiction at all but merely as a prescription of procedures for a class of cases otherwise within federal jurisdiction"). Here, there is no dispute that the requirements for diversity jurisdiction have been met.

Concluding that its review was governed exclusively by the FAA, the district court held that it could modify the award only pursuant to its provisions. <u>See</u> Memorandum Opinion and Order at 10. On appeal, Computer Sciences and its *amicus curiae* argue that the court erred in applying the FAA in light of the choice-of-law clause set forth above which provides that the agreement is to be governed by and construed under Minnesota law "to the extent not preempted by . . . federal law," and the provision within paragraph 7 of the agreement that the arbitrators "shall be bound

by controlling law." Thus, it is argued, the court should have applied the Minnesota Uniform Arbitration Act rather than the FAA and should have reviewed Computer Sciences's application for modification and confirmation of the award thereunder in conjunction with controlling Minnesota common law regarding judicial review of arbitration awards.

In <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468 (1989), the Supreme Court affirmed a California state court's construction of a choice-of-law clause to mean that the parties intended the California rules of arbitration, rather than the FAA, to govern their dispute. <u>See</u> <u>id.</u> at 473. In so doing, the Court stated:

> But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

<u>Id.</u> at 479 (citation omitted).

In <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52 (1995), the parties had entered into an agreement which included both a state choice-of-law clause and an arbitration provision stating that disputes would be resolved under the rules of the National Association of Securities Dealers (NASD). Whereas NASD rules permit arbitrators to award punitive damages, New York law does not. <u>See</u> <u>id.</u> at 58-59. In holding that the agreement did not preclude an award of punitive damages, the Court seemed to limit the reach of <u>Volt</u> to its facts:

The dissent makes much of the similarity between this choice-of-law clause and the one in Volt, which we took to incorporate a California statute allowing a court to stay arbitration pending resolution of related litigation. In Volt, however, we did not interpret the contract *de novo*. Instead, we deferred to the California court's construction of its own state's law. 489 U.S., at 474, 109 S. Ct., at 1253 ("the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review"). In the present case, by contrast, we review a *federal* court's interpretation of this contract, and our own interpretation accords with that of the only decision-maker arguably entitled to deference—the arbitrator.

Id. at 60 n.4 (emphasis in original). Thus, the Court concluded:

At most, the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damage awards. . . . [W]hen a court interprets such provisions in an agreement covered by the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."

 . . . We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

Id. at 62-64 (citations omitted).

Pre-Mastrobuono, we rejected the notion that a general choice-of-law provision, standing alone, is sufficient to lead to the inference that the parties intended for a state arbitration statute to apply, preempting the otherwise applicable federal statute. See

-8-

Lee v. Chica, 983 F.2d 883 (8th Cir. 1993).  We concluded that a state choice-of-law clause did not effectively foreclose an arbitrator's award of punitive damages, even though Minnesota law prohibited them in such proceedings, because "[t]his case is governed by federal law."  See id. at 888.  Specifically, we held that such a clause did not implicate the Minnesota Uniform Arbitration Act.  See id. at 887-88 & n.11.

A number of post-Mastrobuono cases have interpreted that decision as similarly rejecting the notion that a general state choice-of-law clause appended to a contract that also includes an arbitration provision will preempt the applicability of the FAA in a federal court proceeding.   See Ferro Corp. v. Garrison Indus., Inc., 1998 WL 201514 at *11-13 (6th Cir. April 28, 1998); Gallus Inv., L.P. v. Pudgie's Famous Chicken, Ltd., 134 F.3d 231, 233 (4th Cir. 1998); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 134-35 (2d Cir. 1996); PaineWebber Inc. v. Elahi, 87 F.3d 589, 594 & n.5 (1st Cir. 1996); Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276, 1280 (5th Cir. 1994).

Notwithstanding our holding in Lee v. Chica and the post-Mastrobuono decisions cited above, Computer Sciences argues that the provision within the arbitration clause that mandates that the arbitrators are to be "bound by controlling law" makes clear the parties' intent to circumvent the provisions of the FAA.

Assuming that it would be open to us to do so, we will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear.  See, e.g., Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir.), cert. denied, 118 S. Ct. 365 (1997) (federal courts are not required to apply state law "unless it is clear that the parties intended state arbitration law to apply on a particular issue"); Belco Petroleum, 88 F.3d at 134-35. We divine no such intent from the language in the present agreement.  The agreement makes no reference to the Minnesota Uniform Arbitration Act or to Minnesota case law interpreting the allocation of powers between arbitrators and courts.  Moreover, the

choice-of-law clause itself specifically provides that Minnesota law must yield whenever preempted by federal law, which cuts against the argument that the parties intended that the FAA not apply. Thus, we conclude that the district court properly applied the FAA when it entertained the parties' competing motions to confirm the award.

Computer Sciences contends that even if federal arbitration law applies, the parties nonetheless effectively contracted for heightened judicial scrutiny when they included the provision that arbitrators should be "bound by controlling law." Thus, it argues, the district court should have conducted a *de novo* review of the award to ensure that it comported with Minnesota substantive law in accordance with the parties' agreement.

Parties may choose to be governed by whatever rules they wish regarding how an arbitration itself will be conducted. See Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir. 1994) ("Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes"); Volt, 489 U.S. at 479. It is not clear, however, that parties have any say in how a federal court will review an arbitration award when Congress has ordained a specific, self-limiting procedure for how such a review is to occur. Section 9 of the FAA provides that federal courts "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Congress did not authorize *de novo* review of such an award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but to confirm.

At least two circuits have considered this issue. In Lapine Tech. Corp. v. Kyocera Corp., 130 F.3d 884 (9th Cir. 1997), the Ninth Circuit held that because the parties had "indisputably contracted for heightened judicial scrutiny of the arbitrators'

-10-

award," that agreement should not be disregarded "by limiting our review to the FAA grounds." Id. at 888. The court emphasized the FAA's underlying policy that a private agreement to arbitrate should be enforced according to its terms. See id. Thus, it concluded that "[f]ederal courts can expand their review of an arbitration award beyond the FAA's grounds, when (but only to the extent that) the parties have so agreed." Id. at 889. The court's analysis relied heavily on Gateway Tech., Inc. v. MCI Telecomm. Corp., wherein the Fifth Circuit similarly concluded that "[b]ecause these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award." 64 F.3d 993, 997 (5th Cir. 1995). See also Fils et Cables d'Acier de Lens v. Midland Metals Corp., 584 F. Supp. 240, 244 (S.D.N.Y. 1984).

Notwithstanding these cases, we do not believe it is yet a foregone conclusion that parties may effectively agree to compel a federal court to cast aside sections 9, 10, and 11 of the FAA. As Judge Mayer articulated in his Lapine dissent:

> Whether to arbitrate, what to arbitrate, how to arbitrate, and when to arbitrate are matters that parties may specify contractually. [citation omitted]. However, Kyocera cites no authority explicitly empowering litigants to dictate how an Article III court must review an arbitration decision. Absent this, they may not. Should parties desire more scrutiny than the [FAA] authorizes courts to apply, "they can contract for an appellate arbitration panel to review the arbitrator's award[;] they cannot contract for judicial review of that award."

130 F.3d at 891 (Mayer, J., dissenting). We have served notice "that where arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from

-11-

adjudication." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d at 743, 751 n.12 (8th Cir. 1986).

Although Computer Sciences's argument raises an interesting question, we are content to reserve its resolution for a time when circumstances require it. Assuming that it is possible to contract for expanded judicial review of an arbitration award, the parties' intent to do so must be clearly and unmistakably expressed. Cf. First Options, 514 U.S. at 944 (courts should not assume parties intended to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence they did so). In contrast to the agreements at issue in Lapine and Gateway, the present agreement does not manifest such an intent. To the contrary, UHC and Computer Sciences agreed to arbitration that would be "binding," rather than merely constituting a trial run of their claims precedent to a merits disposition in federal court. Thus, the district court correctly reviewed the award under the narrow standards of the FAA.

## III.

We review a district court's judgment on a motion to vacate, modify, or confirm an arbitration award under familiar standards, accepting findings of fact that are not clearly erroneous and deciding questions of law *de novo*. See First Options, 514 U.S. at 947-48; Kiernan v. Piper Jaffray Co., Inc., 137 F.3d 588, 591 (8th Cir. 1998). "Judicial review of an arbitration award is extremely limited." Kiernan, 137 F.3d at 594.

> We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts. Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to

-12-

have been well versed in the consequences of their decision to resolve their disputes in this manner.

Stroh Container Co., 783 F.2d at 751 (citation omitted).

Computer Sciences insists that it does not seek to have the panel's award vacated. It seeks, instead, to have the award selectively modified and then confirmed. Its petition is thus governed by section 11 of the FAA. See Stroh Container, 783 F.2d at 746-47 & n.3. Section 11 permits a court to modify or correct an award to effect its intent and promote justice between the parties in the following circumstances only:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

Id. Computer Sciences's argument for modification of the panel's decision is, essentially, that neither the damages awarded to UHC nor the absence of damages awarded to itself comports with controlling Minnesota law. In effect, it asks us to invade the province of the panel and re-adjudicate this dispute on its merits. That we will not do.

Computer Sciences also asks us to void the panel's retention of jurisdiction on the issue of an award of supplemental damages on Computer Sciences' apparent overpayment of claims. It asserts that the panel had no authority to do so under the governing A.A.A. rules once the initial decision had issued. On a motion for

-13-

confirmation, we have no power to selectively modify the award to delete such an order from the panel's decision unless one of the circumstances detailed in section 11 of the FAA applies. Accordingly, we are without authority to consider the issue.

In sum, we conclude that the district court properly confirmed the award.

## IV.

UHC cross-appeals from the district court's refusal to award attorney fees it incurred in responding to Computer Sciences's petition for modification and to this appeal. Ordinarily, attorney fees may not be recovered by the prevailing party in litigation "unless authorized by statute or justified by circumstances in which the losing party has acted in bad faith." Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, 706 F.2d 228, 232 (8th Cir. 1983). "An unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees." International Union, United Auto., Aerospace & Agric. Implement Workers of America v. United Farm Tools, Inc., Speedy Mfg. Div., 762 F.2d 76, 77 (8th Cir. 1985) (per curiam). The award or denial of attorney fees is a matter entrusted to the district court, which we will not disturb absent an abuse of discretion. See Manhattan Coffee Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 688, 743 F.2d 621, 625 (8th Cir. 1984). We find no such abuse of discretion here.

UHC also asks for costs pursuant to Fed. R. App. P. 38, contending that Computer Sciences's arguments are frivolous. We deny this request.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.