**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-2000**

---

ARROWHEAD GLOBAL SOLUTIONS, INCORPORATED,

Plaintiff - Appellant,

versus

DATAPATH, INCORPORATED,

Defendant - Appellee.

------------------

PSI SYSTEMS, INCORPORATED,

Movant.

---

**No. 04-2298**

---

ARROWHEAD GLOBAL SOLUTIONS, INCORPORATED,

Plaintiff - Appellant,

versus

DATAPATH, INCORPORATED,

Defendant - Appellee.

**No. 05-1169**

ARROWHEAD GLOBAL SOLUTIONS, INCORPORATED,

Plaintiff - Appellant,

versus

DATAPATH, INCORPORATED,

Defendant - Appellee.

----------------

PSI SYSTEMS, INCORPORATED,

Movant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Chief District Judge. (CA-04-391-A)

Argued: November 29, 2005        Decided: February 3, 2006

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Nos. 04-2000 and 05-1169 affirmed; No. 04-2298 dismissed by unpublished per curiam opinion.

**ARGUED:** Michael J. Lockerby, Maria Christine Klein, HUNTON & WILLIAMS, Richmond, Virginia, for Appellant. George D. Wenick, SMITH, CURRIE & HANCOCK, Atlanta, Georgia, for Appellee. **ON BRIEF:** John Charles Thomas, Barry T. Meek, HUNTON & WILLIAMS, Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

"Arbitration can be an effective way to resolve a dispute in less time, at less expense, and with less rancor than litigating in the courts." Publicis Commc'n v. True North Commc'ns., 206 F.3d 725, 727 (7th Cir. 2000). Unfortunately, that truism does not apply in the present case. Appellant, Arrowhead Global Solutions, Inc. ("AGS"), and their former subcontractor, Appellee, Datapath, Inc. ("Datapath"), present this court with a combination of three separate appeals (and assorted motions) all stemming from an acrimonious business arbitration between the parties.

Datapath alleged that AGS breached a contract between the parties and demanded arbitration, which was commenced pursuant to the contract. The resulting arbitration and subsequent litigation led to three separate appeals. First, the arbitrators made an award of immediate equitable relief (hereinafter the "Phase I Award") in favor of Datapath, enjoining AGS from performing certain work. The district court confirmed the Phase I Award. That confirmation is referred to as the "Confirmation Order." AGS appeals the Confirmation Order as No. 04-2000, arguing that the Phase I Award should not have been confirmed both because it was interlocutory and because it was wrongly decided on its merits.

While AGS was appealing the Confirmation Order, Datapath moved in the district court to hold AGS in contempt of the Confirmation Order. The district court, instead of ruling on this motion,

4

decided to remand the issue to the arbitrators to "clarify" their Phase I Award. The parties refer to this decision as the "Remand Order," and AGS appeals it as No. 04-2298. Datapath moves to dismiss No. 04-2298 for a lack of appellate jurisdiction.

Subsequently, the arbitrators ruled in Datapath's favor regarding damages in the case (hereinafter the "Phase II Award"). The district court confirmed the Phase II Award, and AGS appeals that confirmation as No. 05-1169.

For the reasons set forth below, we hold as follows: 1) in No. 04-2000, that the district court did have authority under the Federal Arbitration Act ("FAA") to confirm the Phase I Award and that the district court did not err in confirming that Phase I Award on its merits; 2) in No. 04-2298, that the panel does not have appellate jurisdiction over the appeal because the Remand Order is not a final order properly on appeal; and 3) in No. 05-1169, that the district court did not err in confirming the Phase II Award.

I.

AGS designs, builds, and operates satellite and telecommunications networks. AGS has a "Prime Contract" with the Defense Information Systems Agency ("DISA"), which allows AGS to bid for specific "tasks" from the DISA. When AGS is awarded a task, it executes a more specific contract with DISA called a "Task Order."

5

AGS used Datapath as a subcontractor on a successful bid to DISA that eventually became Task Order 27. Task Order 27 required AGS to provide DISA with fourteen teleports--a complicated satellite receiving device. The subcontract (hereinafter "Subcontract") between AGS and Datapath stated that Datapath would supply, install, and test the teleports and AGS would manage the work. The Subcontract contained nondisclosure agreements that limited AGS's use of Datapath's protected, proprietary information. The Subcontract also contained an arbitration clause.

While Task Order 27 was being completed, DISA solicited a proposal from AGS for additional teleports. AGS's proposal was accepted, and this additional work was called "Annex E." AGS did not, however, award a subcontract for the Annex E work to Datapath. Instead, AGS gave the work to Psi Systems, an entity partly owned by AGS. Based on AGS's actions, Datapath moved for arbitration pursuant to the mandatory arbitration clause of the Subcontract.

At arbitration, Datapath alleged that AGS was acting in breach of the Subcontract by sharing Datapath's information with a third party--Psi Systems. Datapath sought immediate equitable relief in the nature of a preliminary injunction, ordering AGS to cease its work with Psi Systems. The arbitrators bifurcated the arbitration into Phase I (the immediate equitable relief) and Phase II (liability and damages).

The arbitrators ruled in Datapath's favor in the Phase I proceedings and issued an award enjoining AGS from working with Psi Systems.[1] Datapath then moved to have the district court confirm this Phase I Award to give it the force and effect of a court order. After some initial hesitation, the district court confirmed the Phase I Award; the parties refer to that order as the Confirmation Order. AGS appealed the Confirmation Order to this court as No. 04-2000, arguing both that the district court did not have the authority to confirm the Award because it was interlocutory, and that the arbitrators erred in deciding the merits of the Phase I Award.

While the No. 04-2000 appeal was ongoing, Datapath alleged that AGS was continuing to work with Psi Systems and moved in the district court to find AGS in contempt of the Confirmation Order. Instead of deciding whether AGS was in contempt of the Confirmation Order, the district court remanded the issue to the arbitrators to "clarify" the Confirmation Order--the so called "Remand Order."

---

[1]Paragraph one of the Phase I Award states that:

> Effective upon receipt of this Award, Arrowhead is hereby enjoined from the continued performance of its subcontract with Psi Systems, Inc., or from otherwise performing the Scope of Work identified by Datapath in its Technical and Pricing Proposal for Annex E, by any other party or by Arrowhead, without the consent of Datapath.

J.A. at 12.

7

AGS appeals the Remand Order as No. 04-2298. Datapath moves to dismiss this appeal for a lack of appellate jurisdiction.

Finally, the arbitrators decided the Phase II section of the arbitration in Datapath's favor and awarded damages of $2,125,799.90, which included $917,499 of lost profits on the Annex E work. The district court confirmed the Phase II Award, and AGS appeals it as No. 05-1169.


II.

We review the district court decisions to confirm the arbitration award de novo. <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 991 F.2d 141, 145 (4th Cir. 1993). Both we and the district court are confined by the federal law favoring arbitration agreements. Courts are allowed to vacate arbitration awards only if they meet the narrow statutory factors set forth in 9 U.S.C. § 10(a) or if the award demonstrates a "'manifest disregard' of applicable law." <u>Gallus Investments, L.P. v. Pudgie's Famous Chicken</u>, 134 F.3d 231, 233-34 (4th Cir. 1998). More specifically,

> [A] court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision.

<u>Remmey v. PaineWebber, Inc</u>., 32 F.3d 143, 149 (4th Cir. 1994).

8

III.

We first review No. 04-2000, the appeal of the Confirmation Order. This appeal raises two issues. The first is whether the district court had authority to confirm the Phase I Award under section 9 of the FAA. The second is whether, if the district court did have authority to confirm the Phase I Award, it erred in confirming that Award on its merits. With respect to the first issue, we conclude that the district court did have authority to confirm the Award. While AGS correctly notes that piecemeal litigation is generally disfavored, the law in this area indicates that district courts do have the authority to confirm discrete time-sensitive issues such as the Phase I Award. With respect to the second issue, we hold that the district court did not err in confirming the Award on its merits.

A.

Section 9 of the FAA, in relevant part, states that "at any time within one year after the [arbitration] award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Notably, nothing in section 9 compelling the district court to confirm an arbitration award mandates that the award must be final.

9

Section 10 of the FAA, however, notes that the district court "may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, _final_, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10 (emphasis added).

AGS contends that the district court erred in not vacating the Phase I Award because it did not meet this requirement of finality. Specifically, AGS argues that the district court should not have confirmed the Phase I Award while Phase II of the arbitration had yet to occur.  We reject this claim, persuaded by the well-reasoned opinions of the other circuits that have considered similar situations.

As the Seventh Circuit has recently recognized, "[a] ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by the arbitrators."  <u>Publicis</u>, 206 F.3d at 729.  Other circuits agree that "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration."  <u>Island Creek Coal Sales Co. v. Gainesville</u>, 729 F.2d 1046, 1049 (6th Cir. 1984) (internal quotation omitted).  This approach makes sense:

> Temporary equitable relief in arbitration may be essential to preserve assets or enforce performance

10

> which, if not preserved or enforced, may render a final award meaningless. However, if temporary equitable relief is to have any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final decision on the merits. Arbitrators have no power to enforce their decisions. Only courts have that power. Consequently, courts in other circuits that have been faced with arbitrators' temporary equitable awards have not characterized them as non-final awards on the merits which can only be reviewed in extreme cases. Rather, they have characterized them as confirmable, final awards on an issue distinct from the controversy on the merits.

Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) (internal citations omitted). In short, as the other circuits to have addressed this issue recognize, arbitration panels must have the power to issue temporary equitable relief in the nature of a preliminary injunction, and district courts must have the power to confirm and enforce that equitable relief as "final" in order for the equitable relief to have teeth. Accordingly, the question of whether the district court had the power under section 9 to confirm the Stage One Award collapses into the question of whether that Award was "[a] ruling on a discrete, time-sensitive issue." We conclude that it was.

The Phase I Award represented equitable relief against AGS, preventing it from misusing Datapath's trade secrets. Had Datapath been forced to wait until the resolution of the entire arbitration in order to obtain this relief, it would have been powerless to prevent AGS from misusing its proprietary information through AGS's subcontract with Psi Systems. This circumstance underscores the

11

need for the "discrete, time-sensitive" rule.  Accordingly, we hold that the district court correctly classified the Phase I Award "as a discrete, separate, and definitive ruling apart from any decision on the damages," J.A. at 450, and reject AGS's contention that the Award should not have been confirmed as not final.[2]

B.

Having concluded that the district court had the authority to confirm the Phase I Award under section 9 of the FAA, we next consider whether the district court erred in confirming that Award on its merits.  AGS argues that the Phase I Award exceeds the arbitrator's authority and was in violation of public policy.  Considering the great deference that courts must give to

---

[2]Though we review the legal status of the arbitration award de novo and do not defer to the arbitration panel's classification of its own action, it is worth noting that the arbitration panel believed that the Phase I Award was a final order:

> The [Phase I] hearing was understood by the parties, and intended to be a final resolution of all . . . equitable claims.  At the completion of the hearing the time for submission of evidence was concluded and the record was closed as to all requests for equitable relief. . . . While the [Phase I] Award was "interim" in nature, i.e., made prior to a [sic] award on the damages portion of the arbitration, it is, and was intended to be final and enforceable by the court, and not interlocutory, as it relates to all equitable relief sought in this arbitration.

J.A. at 429 (emphasis in original).

arbitration awards, we affirm the district court's Confirmation Award.

1.

AGS first argues that the arbitrators exceeded their authority by improperly adjudicating the rights and responsibilities of Psi Systems and DISA, neither of whom are signatories to the arbitration agreement. Specifically, AGS contends that, by enjoining AGS from performing the Annex E work with Psi Systems for DISA, the Phase I Award improperly impacted Psi Systems's and DISA's rights. This argument is without merit.

AGS correctly notes that, as a matter of hornbook contract law, arbitration panels cannot determine the legal rights and obligations of non-parties to the arbitration agreement. <u>E.g.</u>, 4 Am Jur 2d <u>Alternative Dispute Resolution</u> § 83 (2004). Indeed, neither Datapath, nor the arbitrators, nor the district court dispute this fact. The arbitrators in this case, however, did not impact the legal rights or obligations of DISA or Psi-Systems.

AGS concedes that the arbitrators have the power to dictate the actions of AGS that relate to the subcontract. This power may, as a practical matter, have an incidental effect on other parties. That effect, however, does not prevent the arbitrators from exercising the power that they do have to prohibit AGS from profiting from information proprietary to Datapath. To hold

13

otherwise would leave both courts and arbitrators powerless to issue relief in circumstances such as this.

We therefore affirm the district court's conclusion that the Phase I Award did not affect the legal rights and obligations of non-parties to the arbitration.

2.

AGS also contends that the district court erred in confirming the Phase I Award because the Award violated pubic policy. We disagree.

AGS first argues that the Phase I Award violates the public policy of Virginia because the confidential information was eventually posted on the internet by a third party, which means that the information is no longer a "trade secret" under Virginia law. See Religious Tech. Ctr. v. Lerma, 908 F. Supp. 1362, 1368 (E.D. Va. 1995) (noting that "[o]nce a trade secret is posted on the Internet, it is effectively part of the public domain, impossible to retrieve"). AGS contends that the information was, therefore, no longer a secret subject to a non-disclosure injunction. To the extent AGS may be correct, this alleged misapplication of Virginia trade secret law by the arbitrators is simply an error of law.[3] Errors of law are not one of the grounds on which a court can overturn an arbitration award. Apex Plumbing

---

[3]Though we need not reach the issue, we note that Datapath challenges both the legal and factual bases underlying this claim.

14

<u>Supply v. U.S. Supply Co.</u>, 142 F.3d 188, 193-94 (4th Cir. 1998). ("Review of an arbitrator's award is severely circumscribed . . . because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. . . . [A]s a matter of law neither misinterpretation of a contract nor an error of law constitutes a ground on which an award can be vacated." (internal citations and quotations omitted))

AGS next contends that Datapath did not post an appeals bond, which would be required by Federal Rule of Civil Procedure 65 if one views the Phase I Award as a preliminary injunction. Fed. R. Civ. P. 65(c). AGS notes that failure to require Datapath to post this bond frustrates the public policy behind preliminary injunctions. This contention fails because, even assuming arguendo that Datapath's failure to post an appeals bond represents error, the mis-interpretation of Rule 65 would be a non-reversible error of law.

Finally, AGS argues that there is a general violation of public policy in confirming an award that will make it difficult for DISA to perform vital military operations. However, AGS makes no such showing, and we are unable to infer it on the record before us. We are unwilling to adopt, on these facts, a per se rule that would preclude courts and arbitrators from ever issuing equitable relief when a contract with the United States military is involved.

15

For the foregoing reasons, we reject AGS's arguments concerning the merits of the Phase I Award and affirm the district court Confirmation Order in No. 04-2000.

IV.

Datapath moved in the district court to hold AGS in contempt of the Confirmation Order, and the district court remanded that Order to the arbitrators for "clarification." AGS appeals that "Remand Order" as improper. Datapath, while responding to the appeal of the Remand Order on its merits, also moves to dismiss the appeal for a lack of appellate jurisdiction.[4] There are three possible statutory bases for our appellate jurisdiction in this case: 9 U.S.C. § 16(a)(4); 9 U.S.C. § 16(a)(1)(E); and 28 U.S.C. § 1292(a)(1). Because the Remand Order is not an appealable final order under any of those statutes, we grant Datapath's motion and dismiss No. 04-2298 for a lack of appellate jurisdiction.[5]

---

[4] "Motions to dismiss based on the ground that the appeal is not within the jurisdiction of the Court . . . may be filed at any time." Local Rule 27(f).

[5] AGS also attempts to bypass the jurisdictional statutes entirely, arguing that "Datapath fails to acknowledge . . . that this matter is already subject to the jurisdiction of this court" by virtue of the pending appeal in No. 04-2000. AGS's Opposition to Datapath's Motion to Dismiss for Lack of Jurisdiction at 1. AGS, however, misapprehends our role as an appellate court. The question for this court is not whether we have jurisdiction over "this matter," but whether we have jurisdiction over the order being appealed. While the piecemeal path that this litigation has taken may, in hindsight, have been unfortunate, we cannot extend our jurisdiction without a valid statutory basis. AGS fails to

16

Under the FAA, "[a]n appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(4). The Supreme Court has analyzed this statute and noted that

> the term "final decision" has a well-developed and longstanding meaning. It is a decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Because the FAA does not define "a final decision with respect to an arbitration" or otherwise suggest that the ordinary meaning of "final decision" should not apply, we accord the term its well-established meaning.

Green Tree Fin. Corp. -Alabama v. Randolph, 531 U.S. 79, 86 (2000) (citations omitted). Accordingly, we must decide whether the Remand Order "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." In this case, it does not. Indeed, the Remand Order does not really do anything.

As AGS expressly concedes, "the District Court has held no evidentiary hearings and made no fact findings or legal rulings on the . . . contempt motions." Appellant's Second Supplemental Brief at 14. Far from ending the litigation on its merits, the Remand Order does nothing. The district court simply asks the arbitrators for clarification, it takes no further judicial action. The district court, in effect, announced that it would ask the arbitrators for help in deciding whether to grant the contempt

---

provide that basis with respect to the Remand Order.

17

motion, but it has not yet issued a final order denying it. Section 16(a)(4) does not provide this court with jurisdiction over the mere request for assistance.

## B.

AGS also argues that the panel has jurisdiction to appeal the Remand Order because it is an order "modifying, correcting, or vacating an award." 9 U.S.C. § 16(a)(1)(E). Specifically, AGS argues that the Remand Order is a de facto vacation of the Confirmation Order. This argument is equally unavailing. If the arbitrators issue a ruling that does modify, correct, or vacate the Confirmation Order, and if the district court adopts that ruling, then § 16(a)(1)(E) applies. Right now, however, neither action has occurred. Only the district court or this court can modify, correct, or vacate an award, and neither has done so. Section 16(a)(1)(E) is therefore inapplicable.

## C.

AGS finally contends that the Remand Order is appealable under 28 U.S.C. § 1292(a)(1) as an order modifying an injunction. This contention fails for the same reason that § 16(a)(1)(E) is inapplicable--the Remand Order does not modify anything. It simply asks the arbitrators to take action that might or might not eventually lead to the modification of the Confirmation Order.

18

In summary, we do not have the statutory authority to hear the appeal in No. 04-2298 and we therefore grant Datapath's motion to Dismiss for lack of appellate jurisdiction.

V.

The third and final piece of this appeal concerns the Phase II Award, confirmed by the district court and appealed by AGS as No. 05-1169. AGS argues that the arbitrators did not have the power to award Datapath damages on the Annex E work because Annex E was not part of the original subcontract agreeing to arbitration. For the reasons that follow, we disagree.[6]

Datapath and AGS did not contract to do the Annex E work. Accordingly, there is no separate agreement to arbitrate the Annex E work. Any power that the arbitrators have over Annex E must therefore derive from the original Task Order 27 Subcontract. The original Subcontract states that "[i]n the event that a dispute

_____

[6]AGS also makes various arguments that the award of lost profits was in "manifest disregard" of Virginia law. Specifically, it contends that the parties had contracted not to allow lost profits, that Datapath did not mitigate its damages as required by Virginia law, and that the alleged trade secrets at issue were available on the internet, and therefore not trade secrets under Virginia law. These arguments all fail.

In order to demonstrate "manifest disregard" of Virginia law, AGS must demonstrate that "the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." Remmey, 32 F.3d at 149. AGS does not meet this exacting standard. Accordingly, even if the arbitrators did misapply the law as alleged by AGS, the district court still correctly followed the FAA in confirming the Phase II Award.

19

shall arise during the performance of this Subcontract, the Parties agree [to arbitrate the dispute.]"  J.A. at 225.  The question then becomes--did the Annex E dispute arise "during the performance of" the Task Order 27 Subcontract.

While this contractual language is somewhat ambiguous, the Supreme Court has long noted that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

In this case, the Annex E work was not totally separate from the Task Order 27 Subcontract, as AGS implies.  Rather, it was an extension of Task Order 27--involving an agreement with respect to more of the same product that the parties were already providing to DISA.  In addition, AGS allegedly used the confidential information that it obtained from Datapath during performance of the Task Order 27 Subcontract in deciding to award the Annex E subcontract to Psi Systems.  In short, Annex E, while technically a separate contract from the Task Order 27 Subcontract, was intimately connected to the Task Order 27 Subcontract.  Accordingly, we follow the federal policy of resolving disputes in favor of arbitrability and agree with the district court that the Annex E dispute occurred "during

20

the performance of" the Task Order 27 Subcontract.[7]  We therefore affirm the district court decision to confirm the Phase II Award.[8]

VI.

The district court in this case has noted that the piecemeal approach taken in this litigation, when viewed with 20-20 hindsight, was unfortunate.  See J.A. at 536 ("This doing it piecemeal I guess in some cases will work, but I must say in this one, it sure hasn't.").  Unfortunate case management, however, does not amount to reversible legal error.  The final orders issued by the district court in this case were correct.  We lack jurisdiction to determine whether the non-final order is correct.  Therefore, we

---

[7]AGS also argues that the Annex E damages were a thinly veiled attempt to obtain contempt sanctions from the arbitrators for AGS's alleged violation of the Confirmation Order.  AGS correctly notes that only a court has the power to issue contempt sanctions. However, the argument that the Annex E damages were an attempt to obtain contempt sanctions in disguise fails on its face.  Datapath requested the Annex E damages before AGS's alleged violation of the Confirmation Order. Appellee's Response To Appellant's Second Supplemental Brief at 13.  As a matter of temporal logic, the Annex E damages cannot be sanctions for activity that had yet to occur.

[8]AGS also argues that the district court erred in confirming the Phase II Award before ruling on a Rule 60(b) motion that AGS filed challenging the Phase I Award.  Once again, the parties improperly attempt to conflate the separate issues in this appeal into one meta-appeal.  At some point, the district court will consider and rule on AGS's Rule 60 motion.  At that point, either AGS or Datapath will have a final order from the district court to appeal to this court.  Until that point, the fact that AGS has filed post-judgment motions in No. 04-2000 does not prevent this court from hearing an appeal of the final order in No. 05-1169.

21

affirm the final orders at issue in No. 04-2000 and No. 05-1169 and dismiss No. 04-2298 for a lack of appellate jurisdiction.

<u>Nos. 04-2000 and 05-1169 AFFIRMED</u>
<u>No. 04-2298 DISMISSED</u>